ORIGINAL

G. Bryan Ulmer, III  (WSB #6-2943)
Emily R. Rankin (WSB #6-3451)
Grant H. Lawson (WSB #6-4260)
THE SPENCE LAW FIRM, LLC
P.O. Box 548
15 South Jackson Street
Jackson, Wyoming  83001
Phone:       (307) 733-7290
Fax:          (307) 733-5248
ulmer@spencelawyers.com
rankin@spencelawyers.com

*Attorney for Plaintiff Shelby Hansen*

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING
2014 JUL 10 AM 9 57
STEPHAN HARRIS, CLERK
CHEYENNE

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| SHELBY LYNN HANSEN,<br><br>      PLAINTIFF,<br><br>v.<br><br>WYOMING MEDICAL CENTER, INC., A WYOMING CORPORATION, EMERGENCY MEDICAL PHYSICIANS, P.C., A WYOMING CORPORATION, AND JONATHAN BINDER, M.D.<br><br>      DEFENDANTS. | CIVIL NO. 14Ø138-S |

## COMPLAINT & DEMAND FOR JURY TRIAL

Plaintiff, by and through counsel, G. Bryan Ulmer, III and Emily R. Rankin of

The Spence Law Firm, LLC, for his claims for relief against the Defendants states and

alleges as follows:

### I.      PARTIES

1.      Plaintiff Shelby Lynn Hansen is a citizen of Montana.

2.     Defendant Wyoming Medical Center, Inc. ("WMC") is and was at all relevant times a Wyoming Corporation having its principal place of business in Natrona County, Wyoming.

3.     Defendant WMC holds itself out to the public as a full service medical facility providing, among other things, emergency medical services.

4.     Defendant Emergency Medical Physicians, P.C. ("EMP") is a Wyoming Professional Corporation incorporated under the laws of the State of Wyoming.  It is headquartered in Cheyenne, Wyoming and does business in Wyoming, including Natrona County, Wyoming.  Its principal place of business is in Casper, Wyoming.

5.     Defendant Jonathan Binder, M.D. was at all relevant times a physician licensed to practice medicine in the State of Wyoming and practicing in Natrona County, Wyoming.

6.     Defendant Jonathan Binder, M.D. was at all relevant times a Wyoming citizen.

7.     At all times relevant to the facts alleged herein, Defendant Jonathan Binder, M.D. was employed by and working under the control and direction of defendants EMP and WMC as either an employee, agent, or ostensible agent.

8.     Upon information and belief, Dr. Binder and/or EMP had a contractual relationship with WMC to provide emergency room medical services to members of the public, including Shelby Hansen.

9.     All of the acts and omissions of Dr. Binder alleged herein, were acts and omissions that occurred while Dr. Binder was acting in the scope of his employment as an employee, agent or ostensible agent of defendants EMP and WMC.

## II.     JURISDICTION & VENUE

10.     Jurisdiction is based on diversity of citizenship.  28 U.S.C. § 1332.  The amount in controversy is substantially in excess of Seventy Five Thousand Dollars ($75,000.00), exclusive of interests and costs.

11.     Plaintiff Shelby Hansen complied with the requirements of the Wyoming Medical Review Panel Act, W.S. § 9-2-1513, et. seq.

12.     Prior to commencement of this action, Plaintiff timely filed a claim with the Wyoming Medical Review Panel pursuant to the Wyoming Medical Review Panel Act, W.S. § 9-2-1513 et. seq. and the Medical Review Panel Rules, adopted November 21, 2005.   The Medical Review Panel proceedings were dismissed following defendants' waiver of further proceedings before the Panel.   A copy of the Order of Dismissal is attached to this Complaint as Exhibit 1.

13.     This Court has personal jurisdiction.

14.     This Court has subject matter jurisdiction.

15.     Pursuant to 28 U.S.C. § 1391, the proper venue for this cause of action is the United States District Court for the District of Wyoming since the claim arose in this judicial district and because the acts and omissions complained of occurred within the District of Wyoming.

### III.     FACTS COMMON TO ALL CAUSES OF ACTION

16.     Shelby Lynn Hansen is twenty-five years old.

17.     A little over four years ago, at age twenty, Shelby was permanently and severely disabled due to the negligence of the defendants.

18.     On Sunday, January 17, 2010, Shelby Hansen presented in the emergency department of the defendant Wyoming Medical Center, in Casper Wyoming.

19.     He was seen by medical staff at the Wyoming Medical Center, including, but not limited to emergency room nursing staff, medical imaging staff, and by emergency room physician, defendant Jonathan Binder, M.D.

20.     During his discussions with medical staff at the Wyoming Medical Center, he reported progressively worsening back pain following a fall that had occurred a few weeks earlier.

21.     Shelby reported that the pain was now radiating into both legs and that shortly before his visit to the emergency room he had developed numbness and weakness in both legs.

22.     Shelby also reported that he was unable to walk because of the pain and that he had been crawling around where he lived or trying to use a cane.

23.     The medical history provided by Shelby Hansen indicated an unstable medical condition with significant and progressive worsening of symptoms prior to his visit to the Wyoming Medical Center Emergency Room.

24.     Upon examination, Dr. Binder noted that Shelby was unwilling to move his lower extremities much because of pain and that he experienced severe pain with attempts to move his legs while lying on his back.

25.     Dr. Binder ordered a CT of the lumbar spine.

26.     The CT report indicated that Shelby had LS-SI "broad disc bulge."

27.     The CT report indicated a left posterolateral disc protrusion that "would be expected to produce a left L5 radiculopathy if symptomatic."

28.     The CT findings did not explain Shelby's symptoms.

29.     Prior to discharge Dr. Binder recognized that Shelby Hansen may have a herniated disc.

30.     Prior to discharge, Dr. Binder recognized that Shelby Hansen may need a MRI.

31.     On January 17, 2010, MRI facilities and technicians were available at the Wyoming Medical Center and available for Dr. Binder's use in the care and treatment of emergency room patients.

---

32.     Dr. Binder did not order an MRI.

33.     Dr. Binder neither proved nor disproved the cause of Shelby Hansen's pain prior to discharging Shelby Hansen.

34.     Dr. Binder neither proved nor disproved the cause of Shelby Hansen's neurological abnormalities prior to discharging Shelby Hansen.

35.     Prior to discharge, Dr. Binder recognized that pain radiating into both legs, and bilateral leg numbness and leg weakness were serious symptoms warranting emergent intervention.

36.     Prior to discharge, Dr. Binder knew, or should have known, that neurological insult can result in permanent disability.

37.     Dr. Binder did not consult with any medical specialist prior to discharging Shelby Hansen.

38.     On January 17, 2010, medical specialty consults were available at the Wyoming Medical Center and available for Dr. Binder's use in the care and treatment of emergency room patients.

39.     On January 17, 2010, Dr. Binder discharged Shelby Hansen from the Wyoming Medical Center emergency department.

40.     Following his discharge, Shelby Hansen continued to have pain and continued to experience difficulty moving around the house.

41.     The morning of January 18, 2010, Shelby Hansen awoke and was unable to move his legs to get out of bed to use the bathroom.

42.     Shelby Hansen called for an ambulance.

43.     Upon arrival at WMC, Shelby Hansen was again seen by Dr. Binder.

44.     Dr. Binder called for consultations and ordered a MRI of the spine.

45.    The MRI revealed a large disc herniation at T11-T12, a conus medullaris compression of the spinal cord with apparent signal change.

46.    A consulting neurosurgeon diagnosed Shelby Hansen with "conus medullaris type syndrome, with complete paraplegia and fairly complete sensory loss."

47.    Shelby Hansen was admitted to the Wyoming Medical Center for an emergent decompressive T11-T12 laminectomy with discectomy.

48.    Neurological problems were present during Shelby Hansen's visit to the emergency department at the Wyoming Medical Center on January 17, 2010, but went undiagnosed and untreated.

49.    The failure to treat the neurological problems on January 17, 2010, was a substantial cause of Shelby Hansen's permanent neurological deficits, including paraplegia, sensory loss and neurogenic bowel and bladder.

### IV.    FIRST CAUSE OF ACTION
### NEGLIGENCE OF THE DEFENDANT WYOMING MEDICAL CENTER

50.    Plaintiffs incorporate and adopt by reference all the facts and allegations contained in Paragraphs 1 through 49 of this Complaint.

51.    Wyoming Medical Center holds itself out to the public as offering emergency medical services, including emergency room services, radiological or medical imaging services, and access to medical specialists, to persons in need of emergent medical care.

52.    Having held itself out as providing emergency medical services, the defendant WMC has an obligation to ensure that those services are reasonably available to persons in need of emergent medical care. This obligation includes an obligation to provide qualified, competent and trained medical staff and physicians and the necessary equipment available to provide such care on an emergent basis.

53.     Having held itself out as providing emergency medical services including emergency room services, radiological or medical imaging services and access to medical specialists, the defendant WMC has an obligation to ensure that the necessary staff, physicians, equipment and specialists are available to provide such services and care on an emergent basis.

54.     In addition to the foregoing, Defendant WMC and its employees owe duties of reasonable care to patients, including Shelby Hansen. Such duties include, but are not limited to, duties to fully and properly investigate, examine, consult, diagnose, and treat, or in the alternative, to properly refer and secure qualified and competent medical specialists to investigate, examine, diagnose, and treat such patients.

55.     These duties owed by defendant Wyoming Medical Center are non-delegable, arising from one or more of several sources:

a.      An implied contract between Shelby Hansen and the defendant Wyoming Medical Center to provide emergency medical services;

b.      Statutory and Regulatory provisions which require the hospital to provide emergency services as part of its licensure or receipt of public/government funds;

c.      Duties assumed by the hospital pursuant to accreditations or designations sought and obtained by the hospital; and,

d.      Public policy.

56.     WMC, acting through its officers, directors, employees, agents, and ostensible agents breached the duties of care it owed to Shelby Hansen.

57.     WMC negligently failed to comply, or assure compliance, with the standard of care required under the circumstances as such standard of care existed at the time of the

treatment of Shelby Hansen.  Such acts and omissions include, but are not limited to, the following:

a.  WMC negligently failed to provide appropriate emergency medical care and treatment to Shelby Hansen;

b.  WMC negligently failed to properly monitor and assess the condition of Shelby Hansen;

c.  WMC, acting through its employees, agents, and ostensible agents negligently failed to appropriately intervene to protect the health and welfare of Shelby Hansen;

d.  WMC, acting through its employees, agents, and ostensible agents negligently failed to properly evaluate and diagnose the condition of Shelby Hansen, and negligently failed to take appropriate steps based thereon;

e.  WMC acting through its employees, agents, and ostensible agents negligently failed to provide adequate neurological examination, evaluation and testing of Shelby Hansen;

f.  WMC acting through its employees, agents, and ostensible agents negligently failed to provide adequate medical imaging, including but not limited to MRI imaging of Shelby Hansen;

g.  WMC acting through its employees, agents, and ostensible agents negligently failed to consult with appropriate experts in its care and treatment of Shelby Hansen;

h.  WMC acting through its employees, agents, and ostensible agents negligently failed to follow-up with Shelby Hansen after his discharge from the emergency room;

i.  WMC acting through its employees, agents, and ostensible agents negligently failed to provide adequate medical treatment to Shelby Hansen, to preserve and protect, to the extent fullest extent possible, Shelby Hansen's neurological health, said failure amounting to a loss of chance for Shelby Hansen;

j.  WMC failed to otherwise meet the standards of care and practice requisite in the field; and,

k.  WMC failed to exercise the degree of reasonable care required under the circumstances.

58.    In addition to that set forth above, Defendant WMC is vicariously responsible and liable for any negligent acts and omissions of their employees, agents and or ostensible agents occurring within the course and scope of employment and is independently responsible and liable for any failure to properly hire, train and supervise said employees.

59.    As a direct and proximate cause and result of the acts, errors and omissions of the Defendants as alleged herein, Shelby Hansen's medical condition went undiagnosed and untreated, resulting in permanent damages as more particularly set forth below in the section of this Complaint entitled "Damages."

## V.    SECOND CAUSE OF ACTION
### NEGLIGENT PRIVILEGING AND CREDENTIALING BY THE DEFENDANT WYOMING MEDICAL CENTER

60.    Plaintiffs incorporate and adopt by reference all the facts and allegations contained in Paragraphs 1 through 59 of this Complaint.

61.    The defendant WMC has an obligation to ensure that physicians made available to persons in need of emergent medical care are qualified, competent and trained and are available to provide such care on an emergent basis.

62.    Defendant WMC and its employees owe duties – including non-delegable duties - of reasonable care to patients, including Shelby Hansen, to exercise that degree of care and skill usually exercised or maintained by other hospitals in good standing performing similar health care services in the granting, extension and continuation of medical staff privileges to physicians.

64.    Upon information and belief, WMC contracted with defendant Emergency Medical Physicians, PC to provide emergency medical services to WMC pursuant to a

contract wherein defendant WMC allowed Emergency Medical Physicians to staff the emergency department at WMC.

65.     In the selection of EMP to provide services at the hospital, Defendant WMC had an obligation to exercise reasonable care to ensure that the group and its members providing emergency medical services at the hospital were competent and careful.

66.     In the selection of EMP to provide services at the hospital, Defendant WMC had an obligation to exercise reasonable care in providing the orders or directions in pursuance of which the work is to be done.

67.     In the selection of EMP to provide services at the hospital, Defendant WMC had an obligation to exercise reasonable care to properly supervise the work to see that the work is done to secure the safety of others.

68.     WMC, acting through its officers, directors, employees, agents, and ostensible agents breached the duties of care it owed to Shelby Hansen.

69.     At all times relevant to the facts alleged in the complaint and until today, not all Defendant EMP physicians are Board Certified in emergency medicine and not all EMP physicians who staff the emergency room pursuant to the contract have residencies in emergency medicine.

70.     Defendant WMC holds all EMP physicians staffing the WMC emergency department out to the public as emergency medicine specialists.

71.     WMC negligently failed to comply, or assure compliance, with the standard of care required under the circumstances by failing to ensure that EMP as a group and Defendant Jonathon Binder, M.D. in particular, was qualified, competent and trained to provide emergent orthopedic and/or neurological care.

72.     As a direct and proximate cause and result of the acts, errors and omissions of the Defendants as alleged herein, Shelby Hansen's medical condition went undiagnosed

and untreated, resulting in permanent damages as more particularly set forth below in the section of this Complaint entitled "Damages."

## V.   THIRD CAUSE OF ACTION
## NEGLIGENCE OF DEFENDANTS EMP AND DR. JONATHAN BINDER

73.   Plaintiffs incorporate and adopt by reference all the facts and allegation contained in Paragraphs 1 through 72 of this Complaint.

74.   By rendering medical care to Shelby Hansen, Defendant Dr. Binder established a doctor-patient relationship with Shelby Hansen, representing that he possessed the skill, care, and training normally possessed and exercised by specialists competent to treat the medical conditions presented by Shelby Hansen.

75.   The care and treatment provided by Dr. Binder fell below the acceptable level of medical and surgical skill, knowledge, care and diligence as practiced under the same or similar conditions and circumstances by physicians, or other health care providers of ordinary care, skill and diligence.

76.   To the extent that Dr. Binder is or holds himself out as an emergency medical specialist, orthopedic specialist and/or neurological specialist, he deviated from acceptable standards of care, skill, and diligence as practiced by reasonable specialists in those fields by failing to provide acceptable diagnosis, care, and treatment.

77.   Defendants Dr. Binder and EMP owed duties of reasonable care to emergency medical patients, including Shelby Hansen, to fully investigate, examine, diagnose, and treat, or in the alternative, to properly refer and secure qualified and competent medical specialists to examine, diagnose, emergency medical patients, including Shelby Hansen.

78.   Dr. Binder and EMP were negligent in the care and treatment provided to Shelby Hansen.

79.   Dr. Binder and EMP breached the duties of care they owed to Shelby Hansen.

80.    Dr. Binder and EMP negligently failed to comply with the standard of care required of physicians under similar circumstances practicing in the same field or specialty as such standard of care existed at the time of the treatment provided to Shelby Hansen.  These negligent acts and omissions include, but are not limited to:

a.    Defendants Binder and EMP negligently failed to provide appropriate emergency medical care and treatment to Shelby Hansen;

b.    Defendants Binder and EMP negligently failed to properly evaluate, diagnose and assess the condition of Shelby Hansen;

c.    Defendants Binder and EMP negligently failed to undertake proper or adequate measures for the protection of the health and welfare of Shelby Hansen.;

d.    Defendants Binder and EMP negligently failed to properly evaluate and diagnose the condition of Shelby Hansen, and negligently failed to take appropriate steps based thereon;

e.    Defendants Binder and EMP negligently failed to obtain or assure appropriate care and treatment for Shelby Hansen.

f.    Defendants Binder and EMP negligently failed to appropriately respond to Shelby Hansen's condition and to take appropriate steps to protect Shelby Hansen's health and welfare.

g.    Defendants Binder and EMP negligently failed to provide and/or arrange for prompt, timely, and effective medical procedures in the face of the conditions presented by Shelby Hansen.

h.    Defendants Binder and EMP negligently failed to provide adequate neurological examination, evaluation and testing of Shelby Hansen;

i.    Defendants Binder and EMP negligently failed to provide adequate medical imaging, including but not limited to MRI imaging of Shelby Hansen;

j.    Defendants Binder and EMP negligently failed to consult with appropriate experts in its care and treatment of Shelby Hansen;

k.    Defendants Binder and EMP negligently failed to follow-up with Shelby Hansen after his discharge from the emergency room;

l.    Defendants Binder and EMP negligently failed to provide adequate medical treatment to Shelby Hansen, to preserve and protect, to the

extent fullest extent possible, Shelby Hansen's neurological health, said failure amounting to a loss of chance for Shelby Hansen;

m.   Defendants Binder and EMP failed to otherwise meet the standards of care and practice requisite in the field; and,

n.   Defendants Binder and EMP failed to exercise the degree of reasonable care required under the circumstances.

81.   In addition to that set forth above, Defendant EMP is vicariously responsible and liable for any negligent acts and omissions of it employees, agents or ostensible agents occurring within the course and scope of employment and is independently responsible and liable for any failure to properly hire, train and supervise said employees.

82.   As a direct and proximate cause and result of the acts, errors and omissions of the Defendants as alleged herein, Shelby Hansen's medical condition went undiagnosed and untreated, resulting in permanent damages as more particularly set forth below in the section of this Complaint entitled "Damages."

## VI.   DAMAGES

83.   Plaintiffs incorporate and adopt by reference all the facts and allegation contained in Paragraphs 1 through 82 of this Complaint.

84.   As a direct and proximate result of the Defendants' acts, errors and omissions as set forth in this Complaint, Shelby Hansen was seriously injured and the Plaintiff was damaged.  Such damages include, but are not limited to:

a.   Damages for past and future physical pain and suffering;

b.   Damages for past and future emotional pain and suffering;

c.   Damages for the value past and future medical and psychological services, including but not limited to, physician, hospital, therapy, and rehabilitation expenses;

d.   Damages for past and future loss of enjoyment of life for Shelby Hansen in an amount to be proven at trial;

e.  Damages for past and future permanent disability;

f.  Damages for past and future living expenses, including equipment costs associated with modification of homes and living environments, specialized home services, specialized equipment, costs associated with special training, costs associated with specialized education, vehicles, and other life care devices and aids;

g.  Damages for past and future embarrassment and humiliation;

h.  Damages for loss of earnings and earning capacity for Shelby Hansen in an amount to be proven at trial;

i.  Past and future special damages;

j.  Past and future general damages; and,

k.  Costs of this action for other future relief, as the Court deems equitable and proper.

85.  The acts, errors and omissions described herein were a substantial causative factor causing the neurological damage, neurogenic bowel and bladder, paraplegia, sensory loss, conus medullaris syndrome and all other damages set forth herein.

86.  Appropriate medical care and treatment would have prevented Shelby Hansen's injuries entirely, or at a minimum would have lessened the extent of those injuries.

WHEREFORE, the plaintiff request this Court grant Judgment as follows:

A.  Judgment for the Plaintiff and against the Defendants

B.  Judgment against the defendants for general damages in an amount consistent with the allegations contained herein and to be proven at trial;

C.  Judgment against the defendants for special damages in an amount consistent with the allegations contained herein and to be proven at trial;

D.  Judgment for costs, interest and such other and further relief as the Court deems just and equitable.

DATED this 9th day of July, 2014.

_____
G. Bryan Ulmer, III (WSB# 6-2943)
THE SPENCE LAW FIRM, LLC

## DEMAND FOR JURY TRIAL

The Plaintiff, by and through counsel, The Spence Law Firm, LLC, and pursuant to Federal Rule of Civil Procedure 38 requests this matter be tried to a jury.

DATED this 9th day of July, 2014.

_____
G. Bryan Ulmer, III (WSB# 6-2943)
THE SPENCE LAW FIRM, LLC

BEFORE THE MEDICAL REVIEW PANEL
OF THE STATE OF WYOMING

| | | |
|---|---|---|
| IN THE MATTER OF THE CLAIM OF | ) | |
| SHELBY LYNN HANSEN, | ) | |
| | ) | |
| v. | ) | MRP 12-02 |
| | ) | |
| JONATHAN BINDER, M.D., | ) | |
| EMERGENCY MEDICAL PHYSICIANS,  P.C., | ) | |
| EMERGENCY MEDICAL PHYSICIANS, P.C., | ) | |
| and WYOMING MEDICAL CENTER, INC. | ) | |

## ORDER OF DISMISSAL

THIS MATTER comes before the Director of the Medical Review Panel pursuant to W.S. § 9-2-1519(e) and the Medical Review Panel Rules, adopted November 21, 2005.

A claim by Shelby Lynn Hansen, by and through his attorney, Brian Ulmer, was filed with the Medical Review Panel on January 16, 2012.

Notice of the claim was served upon Emergency Medical Physicians, PC (1950 Bluegrass Circle) on January 19, 2012, upon Emergency Medical Physicians, PC ((1920 Thomas Ave) on January 20, 2012, upon Jonathan Binder, MD on January 20, 2012, and upon Wyoming Medical Center, Inc. on January 20, 2012.

On May 4, 2012, Wyoming Medical Center, by and through Lena Moeller, has submitted, "Waiver of Further Medical Proceedings by Wyoming Medical Center.  On May 7, 2012, Emergency Medical Physicians, P.C. and Jonathon Binder, M.D., by and through Jeff Brinkerhoff, has submitted, "Waiver of Further Medical Review Panel Proceedings by Respondents Jonathan Binder, M.D. and Emergency Medical Physicians, P.C."

The Director finds that the filing of a waiver in lieu of an answer is the functional equilivant of failure to file an answer, and that the Director should issue an order authorizing the claimant to immediately pursue the claim in a court of competent jurisdiction, pursuant to W.S. § 9-2-1519(e).

NOW, THEREFORE, IT IS ORDERED, that the Claimant has complied with the requirements of the Wyoming Medical Review Panel Act, W.S. § 9-2- 1513 et. seq.; that no further action or proceeding shall take place with this claim, and that in particular the Claimant is not required to file the statement of an expert witness; and that the Claimant is authorized to immediately pursue the claim in a court of competent jurisdiction. Pursuant to W.S. § 9-2-1518(a), this dismissal constitutes the final decision of the Medical Review Panel, and the tolling of the applicable limitation period shall begin to run again thirty (30) days after the filing of this decision.

PLAINTIFF'S
EXHIBIT

1

DONE this 8th day of May, 2012.

Eric A. Easton, Director  #5-2176
Medical Review Panel

## CERTIFICATE OF SERVICE

I, Eric A. Easton, do hereby certify that a true and correct copy of the foregoing ORDER OF DISMISSAL was served upon the parties by depositing a true and correct copy in the U.S. mail, postage prepaid this 8th day of May, 2012, to the following:

Brian Ulmer, III
The Spence Law Firm
PO Box 548
Jackson, WY 83002

Lena Moeller
White & Steele
Dominion Towers, North Tower
600 17th Street, Suite 600N
Denver, CO 80202

Jeff Brinkerhoff
Gifford & Brinkerhoff
PO Box 2508
Casper, WY 82602

Eric A. Easton, Director  #5-2176
Medical Review Panel